UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAINTERS DISTRICT COUNCIL ) <br> NO. 58, et al.,                                )  <br>                                                     ) <br>         Plaintiffs,                          ) <br>                                                     ) <br>     v.                                             )  <br>                                                     ) <br> ARCHITECTURAL PAINTING     ) <br> SERVICES, INC., et al.,                ) <br>                                                     ) <br>         Defendants.                      ) | Case No. 4:16 CV 41 RWS |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs—Painters District Council No. 58 and its business manager, several employee benefit plans, and several individuals in their capacities as trustees of those plans—seek to collect unpaid fringe benefit contributions, union dues, liquidated damages, attorneys' fees, and costs from Defendants Architectural Painting Services, Inc., Architectural Painting Services, LLC, and Joseph Sherrillo. Plaintiffs bring this suit under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and Section 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. I held a non-jury trial on November 3, 2016. After consideration of the evidence and arguments presented, I make the following findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a).

## FINDINGS OF FACT

I entered a case management order in this case per Federal Rule of Civil Procedure 16 that set a non-jury trial for October 11, 2016 and ordered the parties to submit their pretrial materials no later than 20 days prior to that date.  Plaintiffs submitted timely pre-trial materials, including a proposed joint stipulation of uncontested facts, which stated Plaintiffs contacted Defendants' counsel regarding the required joint stipulation of uncontested facts but received no response.  Defendants failed to comply with the pretrial order and did not submit any pretrial materials or object to any of Plaintiffs' materials.  As a result, I accept Plaintiffs' joint stipulation of uncontested facts as established and need not recite them exhaustively here.  *See* ECF No. 25.  I will address the facts relevant to Plaintiffs' damages calculation and Defendants' limited challenges to liability and damages.

Plaintiffs are Painters District Council No. 58 (the Union), the Union's business manager, a number of employee benefit plans (St. Louis Painters Pension Trust, St. Louis Painters Welfare Trust, St. Louis Painters Vacation Trust, and Painters District Council No. 2 Apprenticeship and Journeyman Training Trust, or "the Trusts"), and the trustees of those plans.  Plaintiffs seek unpaid employee benefit contributions under ERISA and unpaid union dues and contributions under the LMRA.  Plaintiffs also seek liquidated damages, audit costs, and attorney's fees and costs under ERISA, the LMRA, and the terms of the parties' collective

bargaining agreement (CBA).  Defendants are Architectural Painting Services, Inc., a Missouri corporation (APS Inc.); Architectural Painting Services LLC, a Missouri limited liability corporation (APS LLC); and Joseph Sherrillo, an individual who was an officer of APS Inc. and the organizer of APS LLC.

APS Inc. and APS LLC were bound by CBAs with the Union at all times relevant to this case.  The CBAs provide the Union and the Trusts the right to perform a payroll examination of the financial books and records of APS Inc. and APS LLC when they deem it necessary or desirable.[1]  Joseph Sherrillo, in his individual capacity, also signed an unconditional guaranty document personally guarantying "all existing and future indebtedness of the Company to Union, its members and the Trust Funds" as well as "all damages, cost, fees and expenses which the union . . . or the Trustees of the Trust Funds may be entitled to recover from the Company pursuant to collective bargaining agreement or under any local, state, or federal law."  Pls. Ex. 2.  Under the terms of the CBAs, APS Inc. and APS LLC were required to make contributions to the Trusts and to the Labor Management Cooperation Fund and the St. Louis Painters and Decorating Industry Advancement Fund on the basis of all hours worked by employees covered by the CBAs.  The CBAs required APS Inc. and APS LLC to self-report the number of

---

[1] The parties entered into initial and successor CBAs.  The CBAs further bind APS Inc. and APS LLC to the Painters District Council No. 2 Pension Agreement, Painters District Council No. 2 Welfare Agreement, Painters District Council No. 2 Vacation Agreement, and Painters District Council No. 2 Apprenticeship and Journeyman Training Agreement, which contain provisions relevant to the Union and Trusts' right to perform a payroll examination.

hours covered employees worked and the amount of contributions due by submitting weekly contribution report forms.  The CBAs also required APS Inc. and APS LLC to remit union dues on behalf of covered employees to the Union.  The CBAs require APS Inc. and APS LLC to pay liquidated damages of 10% on delinquent contributions up to the first 30 days of the delinquency, after which liquidated damages are calculated at a rate of 1–1/2% that is compounded monthly until the contributions are fully paid.  The CBAs require APS Inc. and APS LLC to pay attorneys' fees and accounting costs, in addition to other relief prescribed by law, in a suit to recover unpaid contributions, union dues, or liquidated damages.

   Plaintiffs asked the accounting firm Grabel, Schnieders, Hollman & Co., P.C. to perform a payroll examination of APS Inc. and APS LLC's books and records to aid Plaintiffs in evaluating the contributions Defendants owed for the period of June 30, 2013 through May 31, 2016.  Accountant Charles Kinder of Grabel, Schnieders, Hollman & Co., P.C. reviewed documents provided by APS Inc. and APS LLC at Defendants' counsel's offices on June 20, 2016.  Kinder determined that the documents Defendants provided were not sufficient for him to complete the payroll examination.  On July 19, 2016, Kinder emailed Joseph Sherrillo a list of documents he needed Defendants to provide in order to complete the payroll examination, including Form 941s for eight quarters, all form W-2s for 2014 and 2015, and employee earnings records for certain designated periods of

4

time. Defendants did not provide any of these requested documents before Kinder released his written findings on August 10, 2016.

In October 2016, Defendants provided Kinder with two of the documents he had requested, the Form 941 for the third quarter of 2014 and the first quarter of 2015. Kinder determined that these two additional documents did not provide him sufficient documentation to complete the payroll examination or to change the findings of the payroll examination that he completed in August 2016. When Defendants provided these two additional documents to Kinder, they made no representation that they had other documentation available or had previously provided any other documents to the Union for the payroll examination.

As a result of Defendants' failure to provide Kinder with sufficient documentation to complete the payroll examination, Kinder invoked Section 15 of the parties' CBA and presumed that all of Defendants' employees who had any hours reported by Defendants during a weekly pay period worked 40 hours during that pay period. Section 15 of the CBA states, in relevant part:

> The employer shall maintain a time keeping system, which accurately reflects all hours worked by employees covered by this Agreement. This system must be presented to the Union at the signing of the Agreement. The system shall be maintained for the length of the Agreement, and any change in the system must be approved by the Union. In the event that the Employer shall fail to maintain or, on request from the Union or the Trustees of any of the fringe benefit funds, fails to produce such records, then for purposes of computing fringe benefit contributions, dues check-off and Industry Fund contributions, there shall be a rebuttable presumption that any

5

employee who worked for an Employer within particular weekly pay period worked a total of 40 hours in such pay period for such Employer.

Pls.' Exs. 9-10, at 16.  As a result of invoking Section 15, Kinder calculated that from June 30, 2013 to May 31, 2016, Defendants incurred a delinquency of $42,976.91.  This calculation included unpaid delinquent contributions ($31,073.55); liquidated damages on those delinquent contributions, computed through August 31, 2016 ($10,540.55); and costs of the payroll examination that Kinder performed ($1,362.81).[2]  Defendants did not provide Kinder with any documents or explanations to contradict the findings of the payroll examination.

Defendants argued at trial that some of the amounts included in Kinder's payroll examination were included in prior settlement agreements and a consent judgment entered in a prior case between these parties, Case No. 4:12 CV 2379 JCH (E.D. Mo.).  On review of the prior agreements, the consent judgment, and the explanations the parties provide about what occurred in the prior case, I do not find any support for concluding that the amounts paid in Case No. 4:12 CV 2379 JCH overlap with the amounts Kinder found as being owed in the payroll examination. Plaintiffs explain that in the prior case, Defendants paid outstanding principal

---

[2] The amount calculated by Kinder as having been owed as a result of the payroll examination does not include attorneys' fees and costs or any contributions for hours not indicated outside those specifically stated in the payroll examination.  Further, the amount calculated by Kinder as having been owed as a result of the payroll examination also does not include any liquidated damages that would be owed as a result of the employer submitting late contributions and reports to Plaintiffs.

6

amounts due per a payroll examination covering the period of February 1, 2010 to June 30, 2013.  The parties' settlement then covered the remaining amounts Defendants owed from that period, namely, liquidated damages, interest, and attorney's fees and costs, all calculated through February 14, 2014.  Kinder's payroll examination picked up where that audit left off, starting at June 30, 2013.  The first week that Kinder found any amounts owed in his current payroll examination report was March 28, 2014.

Later the parties entered into a second agreement that included a settlement of the amounts owed on the prior agreement as well as amounts for additional delinquent contributions and attorneys' fees Defendants had incurred.  *See* Pls. Ex. 1.  Unpaid principal contributions for periods overlapping with the time period at question in this case were included in this second agreement, but these amounts were based only on Defendants' weekly contribution reports.  The agreement stated that the Contractor agreed it may owe additional amounts that could be uncovered by an audit and explicitly allowed the Funds to conduct an audit of the Contractor's records to determine what additional damages may be owed.  Plaintiffs then conducted that audit—resulting in the payroll examination report in this case—which led them to uncover the damages they now request.  Based on the evidence presented, I find no overlap between the prior settlement agreements/consent judgment in Case No. 4:12 CV 2379 JCH and the payroll

7

examination Kinder conducted in this case.

## CONCLUSIONS OF LAW

Plaintiffs seek to recover unpaid employee benefit contributions, liquidated damages, attorneys' fees, and costs under ERISA, 29 U.S.C. §§ 1132 and 1145. They also seek to recover unpaid union dues and contributions, liquidated damages, and attorneys' fees and costs under the LMRA, 29 U.S.C. § 185.

Section 1145 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Section 1132(g)(2) provides for awards in actions by a fiduciary for or on behalf of a plan to enforce § 1145. The plaintiff bears the burden of proving damages in an ERISA action. *Greater St. Louis Const. Laborers Welfare Fund v. AGR Const. Co.*, 2010 WL 4319349, at *2 (E.D. Mo. Oct. 22, 2010).

"A union may bring [a] breach of contract claim against an employer for unpaid contributions in federal court pursuant to section 301 of the LMRA, *see* 29 U.S.C. § 185, and courts must apply general principles of contract law in interpreting the parties' agreement." *Painters Dist. Council No. 2 v. Anthony's Painting, LLC*, 2011 WL 4369283, at *5 (E.D. Mo. Sept. 19, 2011); *see also*

8

*Trustees of I.B.E.W. Local 405 Health & Welfare Fund v. Affordable Elec., Inc.*, 2009 WL 54559, at *3 (N.D. Iowa Jan. 7, 2009) ("Liability and damages for a § 185 claim are governed by the terms of the contract, *e.g.*, a collective bargaining agreement." (quotation marks omitted)).

The parties agree Defendants were bound by the CBAs. Defendants do not dispute that APS LLC assumed APS Inc.'s obligations and is liable for any amounts owed, nor do they dispute that Joseph Sherrillo is personally liable to Plaintiffs for all amounts Defendants owe in this case, based on the personal guaranty he signed. *See e.g., Painters Dist. Council No 58 v. RDB Universal Services, LLC*, 2016 WL 1366600, at *6–7 (E.D. Mo. Apr. 6, 2016). As a result, I conclude that any amount owed is owed by all Defendants, jointly and severally.

The findings of a payroll examination are presumptively valid. *See Painters Dist. Council 2 v. Grau Contracting, Inc.*, 2012 WL 2848708, at *1 (E.D. Mo. July 11, 2012) ("With respect to damages in an action for delinquent fringe benefit contributions, the findings of a plaintiff's accountant are deemed presumptively valid."); *Greater St. Louis Const. Laborers Welfare Fund v. H2K Const., LLC*, 2010 WL 2640192, at *1 (E.D. Mo. June 28, 2010) (noting that findings of plaintiffs' accountants are presumptively valid and employer has burden of producing evidence countering the audit). At trial, Plaintiffs presented testimony from the accountant who conducted the payroll examination, Charles Kinder.

9

Kinder explained how he conducted the examination based on the records Defendants provided him and relevant provisions in the CBA.

Section 15 of the CBA provides that the 40-hour-per-week presumption applied when an employer fails to maintain or produce adequate records is a rebuttable presumption. Defendants can rebut the presumption by producing records that accurately reflect all hours worked, which they are required by law and by Section 15 of the CBA to keep. *See* 29 U.S.C. § 1059(a)(1) (stating that employers have an obligation to maintain records with respect to each of their employees "sufficient to determine the benefits due or which may become due to such employees"). When Kinder requested documents accurately reflecting all hours worked by covered employees, Defendants did not produce them. Kinder then applied the 40-hour-per-week presumption and completed the payroll examination, which was presented to Defendants. At that point, Defendants only produced two of the documents Kinder requested. Kinder testified this incomplete documentation was not sufficient to allow him to complete the payroll examination. Defendants did not otherwise respond or attempt to rebut the findings of the payroll examination report. Defendants did not produce any evidence at trial rebutting Kinder's findings in the payroll examination.

While Defendants pointed out that Kinder himself did not request any documents from any banks, the contract puts the burden on Defendants to produce

documentation accurately reflecting all hours worked by their employees, not the accountant. Defendants also argue they should not be liable at all because Plaintiffs' evidence at trial was insufficient to prove they breached the contract by failing to maintain the required timekeeping system. They argue Plaintiffs failed to show they had to maintain any particular system or had to produce additional records beyond their weekly contribution reports.

The real issue before me is not whether Plaintiffs showed Defendants were required to keep some particular type of timekeeping system, but rather whether it was appropriate for Kinder to apply Section 15's rebuttable presumption when Defendants provided their weekly contribution reports and no other documentation. Kinder testified that the point of a payroll examination is to check the accuracy of the weekly contribution reports, which are the Defendants' reports of which employees worked and how much they worked during a given pay period. In order to complete the examination, he needs other documentation—generally W-2s, Form 941s, and payroll summaries—to compare to the weekly contribution reports Defendants submit to the Union. It is undisputed that Defendants failed to provide this documentation (except for two late pieces) or any other documentation that could be used to check the accuracy of the weekly contribution reports.

11

If I accept Defendants' interpretation of the agreement, Defendants could misrepresent hours worked in their weekly contribution reports and Plaintiffs would have no way to check the accuracy of the reports. This is not a reasonable interpretation in the context of the parties' agreements, particularly in light of Section 15, as Plaintiffs would never have occasion to apply the rebuttable presumption if they were forced to accept Defendants' weekly contribution reports as true. I will not interpret the parties' agreement in a way that does not make sense. *See Portell v. AmeriCold Logistics, LLC*, 571 F.3d 822, 824 (8th Cir. 2009) ("[W]e prefer a construction that attributes a reasonable meaning to all the provisions of the agreement . . . to one that leaves some of the provisions without function or sense." (quotation marks omitted)). Plaintiffs have shown Kinder properly applied the rebuttable presumption, and Defendants have failed to rebut the presumption or provide any evidence rebutting the accuracy of the payroll examination. As a result, I conclude the payroll examination is accurate and Plaintiffs are entitled to collect all amounts reflected in the examination and permitted by law and the CBA.

First, Plaintiffs seek to recover $41,900.48 under ERISA, 29 U.S.C. §§ 1132 and 1145. If judgment in favor of the plan is awarded in a § 1145 action, ERISA mandates an award of:

>   (A) the unpaid contributions,
>   (B) interest on the unpaid contributions,

>    (C) an amount equal to the greater of—
>       (i) interest on the unpaid contributions, or
>       (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>    (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

Kinder's payroll examination report shows that Defendants owe $29,286.20 in unpaid employee benefit contributions for the period of June 30, 2013 to May 31, 2016. Because I have concluded that the payroll examination is accurate, Plaintiffs are entitled to recover these unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(A). Plaintiffs do not request interest. *See* Resp. to Ct. Order at 8, ECF No. 48 ("Plaintiffs' request for liquidated damages do not include a separate request for interest."). Plaintiffs request liquidated damages in the amount of $9,934.33, based on the unpaid contributions found in the payroll examination. Liquidated damages under § 1132(g)(2) are limited to 20 percent of the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(C)(ii); *Trustees of the I.B.E.W. Local 405 Health & Welfare Fund v. Tichy Elec. Co., Inc.*, 2008 WL 154641, at *11 (N.D. Iowa Jan. 15, 2008). As a result, Plaintiffs are entitled to recover $5,857.24

in liquidated damages for unpaid employee benefits contributions. Plaintiffs request $1,362.81 in audit costs for the payroll examination, which I find is properly supported, appropriate relief.[3] *See* 29 U.S.C. § 1132(g)(2)(E). Plaintiffs have not yet submitted a request for attorneys' fees and costs but indicate they intend to do so after judgment is entered in this matter.

Plaintiffs also request $2,679.95 in liquidated damages under ERISA for late-received employee benefit contributions they claim Defendants made between January 1, 2013–June 30, 2013 and September 1, 2013–March 6, 2016. They only submitted documentary evidence in support of this request. In their briefing, and despite my order directing Plaintiffs to supplement the record and identify the specific legal basis for each amount requested, Plaintiffs did not specifically indicate which provision of ERISA they believe allows them to recover these damages. They state generally that they seek to enforce § 1145 of ERISA, for which damages are provided in § 1132(g)(2), so I am left to assume they request these damages under §§ 1132(g)(2) and 1145.[4]

---

[3] Plaintiffs seek these costs under both ERISA and LMRA, and I conclude they are entitled to receive them under either.

[4] In their complaint, Plaintiffs alleged "APS Inc. is liable for liquidated damages on amounts it has paid and may pay in an untimely manner" under 29 U.S.C. § 1132(a)(3). *See* Compl. ¶ 53. They did not invoke this section again in later filings and provide no argument at all that liquidated damages may be "other appropriate equitable relief" allowed under § 1132(a)(3). I am not going to take this analysis up on my own without any indication from Plaintiffs that they intended to pursue it or any argument or authority from Plaintiffs in support of it.

The amount of an award of liquidated damages under § 1132(g)(2) is predicated upon the amount of unpaid contributions at issue.  *See United Auto. Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr.*, 501 F.3d 283, 289 (3d Cir. 2007); *Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir. 1988) ("[T]he term 'unpaid contributions' has been interpreted to mean contributions unpaid at the time suit was filed, rather than contributions which were delinquent for some time but which were paid up before suit was filed.").  Plaintiffs are not entitled to liquidated damages under § 1132(g)(2) without a request for unpaid contributions.  *See Gittleman*, 857 F.2d at 478 ("Therefore, since there are no 'unpaid contributions,' the funds are not entitled to liquidated damages under section 1132(g)(2) because the availability of those damages is keyed to the existence of 'unpaid contributions.'").  Plaintiffs have not indicated whether any of the contributions from which these liquidated damages resulted remained unpaid when they filed this lawsuit.[5]  Plaintiffs have not identified any other basis under which they request or believe they are entitled to receive these damages.  As a result, I conclude Plaintiffs have not shown they are entitled to liquidated damages under ERISA for late-received employee benefit contributions.

---

[5] Only one entry on Plaintiffs' chart of liquidated damages owed indicates damages owed for a week ending after this lawsuit was filed, and that entry only appears to list the amount of liquidated damages, not the amount of unpaid contributions.  *See* ECF No. 48–3.

15

Second, Plaintiffs seek to recover $2,640.94 under the terms of the CBA and the LMRA, 29 U.S.C. § 185. Kinder's payroll examination report shows Defendants owe $1,787.35 in unpaid union dues and contributions. Because I found that report accurate, Plaintiffs have shown they are entitled to receive this amount. Kinder's report also shows Defendants owe $606.22 in liquidated damages, calculated according to the liquidated damages provision in the parties' agreement. Because damages for a § 185 claim are governed by the terms of the contract, Plaintiffs have shown they are entitled to this amount. Plaintiffs also request $247.37 in liquidated damages for late-received union dues and contributions. Again, because Plaintiffs properly supported this request, and because this is what the parties contracted for, Plaintiffs have shown they are entitled to this amount.

Defendants argued for the first time in their post-trial brief that Plaintiffs are limited to only collecting amounts owed in the timeframe referenced in Plaintiffs' complaint. Defendants were on notice of the recovery Plaintiffs seek, and Plaintiffs presented evidence at trial of the recovery they seek, which Defendants did not object to. *See* Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."). Defendants' argument is also defeated by Rule 54(c) of the Federal Rules of Civil Procedure, which states that "[a]

16

default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. *Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.*" Fed. R. Civ. P. 54(c) (emphasis added). Because this is not a default proceeding, and because Defendants were on notice of the recovery Plaintiffs seek and did not object to it, Plaintiffs can recover all amounts to which they are entitled, regardless of whether these amounts were demanded in their complaint.

## CONCLUSION

Plaintiffs have met their burden of proof to show that Defendants are liable to them in the amount of $39,147.19, calculated as follows:

- Unpaid employee benefit contributions for June 30, 2013–May 31, 2016: $29,286.20
- Liquidated damages for unpaid employee benefit contributions for June 30, 2013–May 31, 2016: $5,857.24
- Unpaid union dues and contributions for June 30, 2013–May 31, 2016: $1,787.35
- Liquidated damages for unpaid union dues and contributions for June 30, 2013–May 31, 2016: $606.22
- Liquidated damages for late-received union dues and contributions for Jan. 1, 2013–June 30, 2013 and Sept. 1, 2013–Mar. 6, 2016: $247.37
- Audit costs: $1,362.81

Plaintiffs also indicate Defendants are entitled to a credit of $9,162.48. As a result, the total amount Defendants owe Plaintiffs for the claims in this suit as of the date of this order is $29,984.71.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs shall have judgment against Defendants Architectural Painting Services, Inc., Architectural Painting Services LLC, and Joseph Sherrillo, jointly and severally, in the amount of $39,147.19.

**IT IS FURTHER ORDERED** that Defendants are entitled to a credit of $9,162.48 against such judgment.

**IT IS FURTHER ORDERED** that as of the date of this order, Defendants owe Plaintiffs $29,984.71 for the claims brought in this lawsuit.

A separate judgment will issue.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 5th day of April, 2017.